1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

KEVIN G. BOYD, individually and on
behalf of others similarly situated,

Plaintiff,

v.

BANK OF AMERICA, N.A.,

Defendant.

C18-1207 TSZ

ORDER

13

14

15

16

17

18

19

20

21

22

THIS MATTER comes before the Court on plaintiff's motion for preliminary

approval of class action settlement, docket no. 25. Upon initial review of plaintiff's

motion papers, the Court identified a disparity between the Gross Settlement Value

($225,000) set forth in the parties' Joint Stipulation of Class Action Settlement and

Release, Ex. 1 to Haffner Decl. (docket no. 25-1) [hereinafter "Settlement Agreement"],

and the amount that the proposed notice to the class indicated defendant had agreed to

pay into a settlement fund ($2,250,000), *see* Ex. 2 to Haffner Decl. (docket no. 25-1 at

38). Plaintiff's counsel has since filed a praecipe, docket no. 26, attached to which is a

corrected version of the proposed class notice, which now states that defendant has

agreed to pay "up to $225,000" in settlement, *see* Ex. 1 to Praecipe (docket no. 26 at 6).

23

ORDER - 1

1    Having considered the papers filed in support of plaintiff's motion, including the praecipe

2    and the proposed class notice attached thereto, the Court enters the following order.

3    **Discussion**

4         In this action, plaintiff Kevin G. Boyd, who was employed as a mortgage broker

5    or lending officer on a commission basis, sued defendant Bank of America, N.A., on

6    behalf of himself and all others similarly situated, for allegedly improper deductions of

7    funds advanced for rest breaks and non-sales work.[1]  Plaintiff alleged that such

8    deductions constituted both a breach of contract and a willful refusal to pay wages in

9    violation of Washington law.  *See* Compl. at ¶¶ 26-38 (docket no. 1).  The parties have

10   engaged in mediation and reached a settlement.  Although less than clear, the terms of the

11   parties' settlement appear to be as follows.  The parties propose a settlement fund of

12   $225,000, which will be used to pay (i) attorney's fees (up to 30% of the fund or

13   $67,500); (ii) roughly $8,000 in litigation costs; (iii) $5,000[2] in incentive fees to the

14   named plaintiff; and (iv) approximately $13,500 in settlement administration expenses,

15   leaving a net settlement fund of about $131,000 to be allocated pro rata among 376 class

16   members, who are persons with certain job codes employed in Washington by defendant

17   or a related entity from August 12, 2012, to the present.  *See* Settlement Agreement at

18

19   _____

20   [1] Plaintiff acknowledges that a recent Washington Supreme Court decision might preclude the
     claim for compensation for non-sales work.  Pla.'s Mot. at 17 (docket no. 25) (citing *Sampson v.*

21   *Knight Transp., Inc.*, 193 Wn.2d 878, 893, 448 P.3d 9 (2019)).

22   [2] The current proposed notice to the class indicates that the incentive or service payment will be
     $20,000, *see* Ex. 1 to Praecipe (docket no. 26), but this figure is inconsistent with Paragraph 38

23   of the Settlement Agreement.

ORDER - 2

¶ 11, Ex. 1 to Haffner Decl. (docket no. 25-1 at 11) (defining the "Settling Class" as "[a]ll persons who are or have been employed in job codes SM009, SM171, SM172, SM603, SM604, SM605, SM610, SM611, SM612, and/or SM614 by Bank of America, N.A. and/or Bank of America Corporation in the State of Washington at any time from 08/12/2012 to the date of Preliminary Approval of the Settlement").

The parties propose to distribute the net proceeds on the basis of "Compensable Weeks," meaning weeks that class members were "actively employed" by defendant during the class period, but discounting to one-twentieth (1/20th) any Compensable Week that overlaps with the settlement in _Flanagan v. Bank of America, N.A._, Suffolk County, N.Y. Supreme Court Case No. 613647/2018.  _See_ Settlement Agreement at ¶ 49(a), Ex. 1 to Haffner Decl. (docket no. 25-1 at 23).  The parties contemplate that a settlement or claims administrator will compute the total number of Compensable Weeks among all class members who have not excluded themselves, and will then divide that figure into the net settlement amount to determine the Per Week Payment.  _Id._ at ¶¶ 49(b)-(c).  Each participating class member will receive the product of his or her number of Compensable Weeks multiplied by the Per Week Payment, minus income taxes that must be withheld and remitted to the Internal Revenue Service.  _See id._ at ¶¶ 44 & 50.

The parties have not provided any estimates for the sums that individual class members might expect to receive from the settlement.  The Court, however, has been able to ascertain as follows.  If the anticipated net proceeds of the settlement ($131,000) were distributed equally among the 376 class members, then each individual would receive approximately $348, minus withheld income taxes.  On the other hand, under the

1  proposed pro rata scheme, assuming that defendant's pre-mediation disclosure of a

2  class-wide total of 32,507 Compensable Workweeks, *see id.* at ¶ 8 (docket no. 25-1 at

3  10), is accurate, then the Per Week Payment would be $4.02 per week, and the range of

4  recoveries would be between $4.02 for a class member who worked only one week

5  during the class period and $1,672.32 for an individual who worked each of the 52 weeks

6  of each of the approximately eight (8) years of the class period.[3]  The Court does not

7  intend for these values to be binding in any way; they are set forth merely for the purpose

8  of evaluating the reasonableness of the proposed class action settlement.

9          According to plaintiff's counsel, the total amount of damages suffered by the class

10  was roughly $625,714.  Plaintiff's counsel reached this conclusion by assuming that each

11  class member missed two ten-minute rest breaks each day, on each of the five days of a

12  Compensable Week, and that such missed breaks should be compensated at an overtime

13  rate because they extended the work day.  *See* Pla.'s Mot. at 16-17 (docket no. 25).  The

14  uncompensated time was converted to a monetary figure by using the average hourly

15  wage among the various job titles at issue.  *Id.* at 16.  If plaintiff's counsel's estimate is

16  apportioned equally among the class members, then each individual could be viewed as

17  being owed $1,664 in back wages.  This amount is actually less than the top of the range

18  of potential individual recoveries from the settlement.  Based on this understanding of

19  how the anticipated distributions of the settlement proceeds compare with the damages

20

21  [3] The Court recognizes that defendant's calculation of the total number of Compensable Weeks
22  covers the period until May 9, 2019, and is not up to date.  Thus, the Per Week Payment figures
    computed by the Court might be slightly too high or too low, depending on how many class
23  members continued to be employed during the year or more after May 2019.

ORDER - 4

that might have been awarded if plaintiff prevailed on the merits in this litigation, the Court ORDERS as follows:

(1)     Plaintiff's unopposed motion for preliminary approval of class action settlement, docket no. 25, is GRANTED in part, DEFERRED in part, and RENOTED to August 7, 2020.

(2)     The Court hereby CERTIFIES for settlement purposes the following Class:

> All persons who are or have been employed in job codes SM009, SM171, SM172, SM603, SM604, SM605, SM610, SM611, SM612, and/or SM614 by Bank of America, N.A. and/or Bank of America Corporation in the State of Washington at any time from August 12, 2012, to the date of this Order (the "Covered Period" or "Class Period").

Any person who timely submits an executed opt-out form is EXCLUDED from the Class.

(3)     The following individual is APPOINTED as Class Representative:  plaintiff Kevin G. Boyd.  The following attorneys are APPOINTED as Class Counsel:  Joshua H. Haffner and Graham C. Lambert of Haffner Law PC.

(4)     Rust Consulting, Inc. is APPOINTED as Settlement (or Claims) Administrator.

(5)     With respect to the Class defined in Paragraph 2, the Court CONCLUDES that the following prerequisites are satisfied:  (i) the Class is so numerous that joinder of all members is impracticable; (ii) questions of law and fact common to all members of the Class exist; (iii) the claims of the Class Representative are typical of the claims of the class members; and (iv) the Class Representative and Class Counsel fulfill the criteria for fair and adequate representation.  *See* Fed. R. Civ. P. 23(a).  The Court CONCLUDES that the Class defined in Paragraph 2 also meets the following requirements:  (i) the

1    questions of law and/or fact common to class members predominate over questions

2    affecting only individual members; (ii) resolution by class action settlement is superior to

3    other available methods of adjudicating the dispute; and (iii) the interests of absent class

4    members who wish to litigate their claims for damages individually are adequately

5    protected by the notice and opt-out provisions described in the Settlement Agreement.

6    _See_ Fed. R. Civ. P. 23(b)(3).

7         (6)    The Settlement Agreement executed by the parties, Ex. 1 to Haffner Decl.

8    (docket no. 25-1), is preliminarily APPROVED with two exceptions, as discussed in

9    Paragraphs 7 and 8.  The proposed class action settlement is not obviously deficient and

10   no evidence exists at this stage of the proceedings of any fraud, collusion, overreaching,

11   or disregard of the rights of absent class members on the part of any party.  Sufficient

12   discovery was conducted in this case, and Class Counsel has sufficient experience in

13   similar proceedings to propose this settlement.  The Court's preliminary approval is

14   subject to change pending further submissions of the parties and the outcome of a hearing

15   on final approval of the proposed class action settlement.

16        (7)    The Settlement Agreement refers to an Adjustment Form that each class

17   member will receive in addition to the notice of the proposed settlement.  _See_ Settlement

18   Agreement at ¶ 45, Ex. 1 to Haffner Decl. (docket no. 25-1 at 21-22).  The Adjustment

19   Form will provide individualized information concerning a class member's Compensable

20   Weeks and estimated pro rata share of the settlement proceeds.  _See id._  The Settlement

21   Agreement requires that the class notice tell class members how to request corrections to

22   the Adjustment Form.  _See id._  The proposed form of class notice, however, makes no

23

1   mention of the Adjustment Form.  *See* Ex. 1 to Praecipe (docket no. 26).  The Settlement

2   Agreement further indicates that "Settling Class Members will be instructed that they

3   must return the completed Adjustment Form with a postmark reflecting a date within

4   sixty (60) calendar days from the date of first mailing of the Settlement Class Notice,"

5   and that, if a class member provides both an Adjustment Form and an opt-out form, the

6   one submitted later in time will control.  *See* Settlement Agreement at ¶¶ 24 & 45, Ex. 1

7   to Haffner Decl. (docket no. 25-1 at 15 & 22).  The Court DECLINES to approve any

8   provision of the Settlement Agreement that requires class members to "opt in" to the

9   settlement by mailing an Adjustment Form to the Settlement or Claims Administrator.

10  The Adjustment Forms may be provided to class members for informational purposes, to

11  help them understand what they might expect from the settlement, and to permit them to

12  challenge the accuracy of the data set forth, but the Adjustment Forms may not be used as

13  a prerequisite for obtaining a share of the settlement proceeds.

14          (8)     The Settlement Agreement states that, if any settlement checks are not

15  cashed or any portion of the settlement funds are not distributed, any residual amount

16  shall be paid to the Legal Foundation of Washington.  *Id.* at ¶ 42(e).  The Court defers

17  ruling with regard to this provision of the Settlement Agreement.  A *cy pres* beneficiary

18  must be "tethered to the nature of the lawsuit and the interests of the silent class

19  members."  *Dennis v. Kellogg Co.*, 697 F.3d 858, 867 (9th Cir. 2012); *Nachshin v. AOL,*

20  *LLC*, 663 F.3d 1034, 1036 (9th Cir. 2011) ("*Cy pres* distributions must account for the

21  nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests

22  of the silent class members, including their geographic diversity.").  The parties bear the

23

1  burden of demonstrating the appropriateness of their selection of any *cy pres* recipient,

2  and they have not done so.

3  (9)   The Court DEFERS the scheduling of a hearing on final approval of the

4  proposed class action settlement until after the parties file (i) appropriate amendments to

5  their Settlement Agreement, addressing the issues identified in Paragraphs 7 and 8, and

6  (ii) a revised proposed notice to class members, incorporating the following changes:

7  (a)   <u>Adjustment Form</u>:  As indicated in Paragraph 7, notwithstanding the
Settlement Agreement's requirement that the notice inform class members about
8  the accompanying Adjustment Form, the current form of notice does not mention
the Adjustment Form.  The parties shall include in their revised proposed class
9  notice language about the Adjustment Form that is consistent with Paragraph 7 of
this Order and any amendments to the Settlement Agreement that are adopted by
10  the parties.

11  (b)   <u>Calculating Pro Rata Shares</u>:  The current proposed notice does not
provide sufficient information for class members to understand how the amounts
12  they will be entitled to receive from this settlement will be calculated.  Reference
to the Settlement Agreement as containing "the exact allocation formula," <u>*see*</u>
13  Proposed Notice at ¶ 4, Ex. 1 to Praecipe (docket no. 26), is inadequate.  The
notice should instead outline the method for computing pro rata shares, including
14  the specific amounts that are anticipated to be deducted from the gross settlement
fund,[4] state the range of recoveries, and provide at least one concrete example.

15  (c)   <u>Implying Imprimatur</u>:  The current class notice contains statements
that might unduly dissuade class members from objecting or otherwise exercising
16  their rights, for example, a "federal court authorized this notice" and the "Court
ordered that you be sent this notice," as well as phrases giving the misimpression
17  that the Court has already approved certain elements of the proposed settlement,
for example, "Court-approved attorneys' fees," "Court-approved Service
18  Payments," and "the [allocation] formula that has been approved by the Court."
The parties are encouraged to instead use passive voice, for example, "this notice
19  is being sent to you because you have a right to know about a proposed settlement
of a class action lawsuit and about your options before the Court decides whether
20

21  _____

22  [4] The revised proposed form of notice should correct the existing mistake about the incentive or
service payment to the Class Representative.  <u>*See*</u> <u>*supra*</u> note 2.  In addition, the third sentence of
23  Paragraph 7 of the current proposed class notice contains a typographical error.

to approve the settlement," or conditional language, for example "anticipated attorneys' fees," "requested service payments," or "proposed formula for apportioning the net settlement funds."

(d)    Correspondence:  The proposed form of notice tells class members that they should "write to the Court," which might cause confusion about where correspondence should be directed.  All correspondence, including opt-out forms, objections, and Adjustment Form corrections, should be sent to the Settlement Administrator, and class members should **not** submit any settlement-related documents directly to the Court.  The parties are urged to omit "the Court" from their instructions to class members, for example, "you may state any objections to the proposed settlement by sending a letter to the Settlement Administrator."

(e)    Class Counsel:  The current class notice indicates that the Court has "decided" certain lawyers "are qualified" to represent class members.  Only one of the half-dozen law firms listed, however, is Class Counsel, and the Court has made no such ruling.  In addition, the proposed form of notice states that class members "will not be charged" for the services of Class Counsel.  This statement is not accurate.  Class Counsel's fees are being deducted from the gross awards due to class members under the settlement.  Moreover, although the proposed form of notice describes Class Counsel's intent to request attorney's fees of "up to 30%" of the settlement fund, the dollar figure associated with the anticipated motion is nowhere stated.  The revised proposed notice must set forth the amounts of attorney's fees and costs that Class Counsel will request and advise class members that a copy of the motion may be viewed on Class Counsel's website and at the website maintained by the Settlement Administrator for this litigation.  The motion for attorney's fees and costs must be filed with the Court and uploaded to the websites by the date that notices to class members are mailed.  *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988 (9th Cir. 2010).  The appropriate noting date for such motion will be addressed when the final settlement approval hearing is scheduled.

(f)    *Cy Pres* Recipient:  The current proposed notice has no provision concerning the disposition of uncashed or unclaimed checks.  The revised form of notice must describe the timing on which checks will be deemed uncashed or unclaimed, identify the proposed *cy pres* recipient, and advise class members that they may object to the *cy pres* recipient even if they have no other objection to the settlement.

(g)    Websites:  The current form of notice has no placeholder for either Class Counsel's website or the Settlement Administrator's website.  The revised proposed class notice shall prominently set forth both website addresses, and shall advise class members that they may obtain a copy of the Settlement Agreement and other materials relating to this litigation, including a copy of the pleadings and this Order, by visiting the Settlement Administrator's website.

1

2

(h)    Hearing Logistics:  The Court will not require class members to indicate in advance that they wish to be heard at the hearing concerning final approval of the proposed settlement, and the parties shall revise the class notice accordingly.  Moreover, if the final settlement approval hearing needs to be rescheduled or if it must be conducted remotely via telephone or videoconference, counsel will be advised and notice will be posted in advance on the Court's website.  A specific webpage address for inclusion in the class notice will be provided at a later date.

3

4

5

6

(i)    Opt-Out Forms:  The current form of notice instructs class members to send a letter to the Settlement Administrator if they wish to be excluded from the Class.  The parties are directed to craft a suitable opt-out form, which shall be appended to the revised proposed class notice.  The notice shall indicate that class members may exclude themselves by sending a completed and signed opt-out form to the Settlement Administrator.  They may also opt out via letter with the components outlined in Paragraph 9 of the current proposed notice to the class.

7

8

9

(10)    On or before the new noting date for the pending motion (August 7, 2020), the parties shall file supplemental materials that are consistent with this Order, including any amendments to the settlement documents, a revised proposed notice to the class with appended opt-out form, and a sample Adjustment Form.

10

11

12

13

IT IS SO ORDERED.

14

The Clerk is directed to send a copy of this Order to all counsel of record.

15

Dated this 7th day of July, 2020.

16

17

18

Thomas S. Zilly
United States District Judge

19

20

21

22

23

ORDER - 10